S. LANE TUCKER
United States Attorney

AINSLEY MCNERNEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: Ainsley.McNerney1@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>BRIAN KEVIN POWELL,<br><br>    Defendant. | No. 3:22-cr-00061-JMK-KFR |

**SENTENCING MEMORANDUM**

  The United States recommends imposition of the following sentence:

**INCARCERATION.................................................................................360 MONTHS**
**SUPERVISED RELEASE..................................................................................LIFE**
**SPECIAL ASSESSMENT................................................................................$100**
**RESTITUTION ...................................................................................$35,016.13**
**FINE...........................................................................................................N/A**
**JVTA ASSESSMENT ..................................................................................$5,000**

**FACTS**

In December 2021, the defendant, Brian Kevin Powell contacted Minor Victim 1 (MV-1) through the social media application Snapchat, intending to sexually exploit her. MV-1 was only 12 years old when the defendant first contacted her. The defendant groomed MV-1 over a series of months, luring MV-1 into a "relationship" with him by gaining her trust through flattery. He then exploited that trust to entice her to send him nude photographs and videos of herself masturbating.

The defendant chose MV-1 by prowling Snapchat public accounts until he found MV-1 through her friends' accounts. He connected with MV-1 through her Snapchat account and once he obtained MV-1's phone number, began his daily exploitation of MV-1. Records indicate that the first phone call between the defendant and MV-1 took place on January 3, 2022. That first phone call evolved into approximately 34,000 phone transactions between the defendant and MV-1 over the course of January 2022 to April 2022.[1] The majority of the transactions took place Monday through Thursday between 2200hrs and 0400hrs AKST/AKDT. The defendant and MV-1 communicated every single day during that period, daily sharing nude content or engaging in sexual acts over video calls.

The defendant's exploitation of MV-1 unfolded in various ways. According to reports by MV-1, the defendant convinced MV-1 that they were in a relationship, and that he was her boyfriend. He used the "relationship" he built with MV-1 to solicit nude

---

[1] This data includes text messages, phone calls, and video calls. It does not include transactions from April 17, 2022 through May 11, 2022 when law enforcement first made contact with MV-1.

U.S. v. Powell
3:22-cr-00061-JMK-KFR

Page 2 of 15
Case 3:22-cr-00061-JMK-KFR   Document 44   Filed 12/14/23   Page 2 of 15

photographs of MV-1. He escalated his exploitation by soliciting videos of MV-1 masturbating and sent her videos of himself masturbating. He further escalated the exploitation by asking MV-1 to Facetime video call him from the shower. During these video calls, MV-1 would touch herself, often while the defendant also masturbated.

The defendant was at all times aware that MV-1 was a minor. She told him during their initial contact that she was 15 years old, and he told MV-1 he was 27 years old. The defendant was, in fact 40 years old. The defendant became aware of MV-1's true age in February 2022 through her mother's Facebook account. The defendant sent MV-1 a screenshot of her mother's Facebook post depicting MV-1's thirteenth birthday. The defendant continued his sexual exploitation of MV-1 despite knowing she was 13.

According to MV-1, the defendant controlled every aspect of MV-1's life. He made MV-1 believe that they were in a relationship, in love, would be married, have children, and encouraged MV-1 to runaway to him in Spokane, Washington. The defendant stalked and intimidated MV-1, keeping track of her through her family's social media accounts. The defendant told MV-1 that he sold cocaine and was part of a "gang." He kept tabs on MV-1 by requiring her to provide him with her social media account and email passwords. The defendant also required MV-1 to forward all of her text messages and contacts to him and send screenshots of her call logs. He required MV-1 to share her location with him so that he could track her movements. The defendant dictated what MV-1 wore, who she spoke to, and if and when she was allowed to wear makeup.

The defendant's control rose to the level of directing MV-1 not to speak to friends

or family, alienating her from those best equipped to save her from a predator. If MV-1 broke contact with the defendant, the defendant obtained a new phone number using an application called TextMe[2] so he could call MV-1 without her recognizing the caller. If that did not work, the defendant contacted MV-1's friends and family in an attempt to locate her, often posing as a classmate or friend by the name of "Margaret."

When MV-1 broke contact with the defendant after her first interview with law enforcement in the case, the defendant reached out to MV-1's grandfather, mother, and aunt. MV-1's mother received an unsolicited message from a number she did not recognize, but was later revealed to belong to the defendant, offering to mail her cocaine. In another message to MV-1's aunt, the defendant, posing as Margaret, attempted to locate MV-1, citing concern for her safety. He also harassed a friend of MV-1 on Snapchat in an attempt to locate MV-1.

Perhaps most disturbing is how the defendant succeeded in alienating MV-1 from her loved ones. According to MV-1, the defendant logged into MV-1's Snapchat account to learn who her friends were and chat with them. He would tell MV-1 that her friends thought she was a "whore." This caused MV-1 to stop going to school for fear of being bullied, further isolating her from friends and safe adults. The defendant alienated MV-1 from her family using fear tactics, telling her that they would not approve of her "relationship" with him because they would not understand. In an attempt to shield his identity from others, the defendant gave MV-1 a false last name, claiming his name was

---

[2] TextMe is a phone application that provides the user with the ability to choose a phone number from any area code they choose to use for texting and voice calls over Voice Over Internet Protocol (VOIP).

U.S. v. Powell
3:22-cr-00061-JMK-KFR

Page 4 of 15
Case 3:22-cr-00061-JMK-KFR   Document 44   Filed 12/14/23   Page 4 of 15

Brian Gaither. He had MV-1 refer to him as "Daddy." The defendant told MV-1 not to save his name in her phone, and instead save his number under "Daddy," which she did.

To exert further control over MV-1, the defendant created fake social media accounts posing as different men. He sent MV-1's nude photographs and videos to those social media accounts, took screenshots of those images with the username of the spoofed account, and accused MV-1 of "cheating" on him with those other men. He claimed to have spoken to those men and accused MV-1 of having another boyfriend in Fairbanks, Alaska. The investigation revealed that the Snapchat account the defendant claimed belonged to the "boyfriend in Fairbanks" was created by the defendant.

The defendant repeatedly questioned MV-1 and accused her of "cheating" on him. On several occasions, if the defendant was not satisfied that MV-1 was being honest with him, he accused her of lying, called her demeaning names to include, "hoe," "dirty little raz bitch," and "bum," and threatened to end the relationship. In one text message exchange, among several lengthy pleadings by MV-1 to not end the relationship, the defendant responded by saying "Die." The defendant's exploitation and abuse of MV-1 altered the course of her life as evidenced by the Victim Impact Statement filed as Attachment 1 to the Supplemental Sentencing Memorandum.

When law enforcement interviewed the defendant in May 2022, the defendant almost immediately identified that he knew why law enforcement contacted him. He attempted to shift blame onto MV-1, reporting to law enforcement that MV-1 first added him on Snapchat, told her she was 19 years old, and initiated the first phone conversation.

U.S. v. Powell
3:22-cr-00061-JMK-KFR
Page 5 of 15
Case 3:22-cr-00061-JMK-KFR   Document 44   Filed 12/14/23   Page 5 of 15

The defendant also stated that he does not sell cocaine or drugs, nor is he part of a gang, but he did tell MV-1 those things to boost his "creds."

The defendant stated he has never enticed a minor in the past but did later admit to a prior arrest for similar conduct that did not result in charges. The defendant recounted two instances of similar conduct in 2020, first when he was accused of sending nude photos to a minor classmate of his son and second when he was accused of sending a photo of his penis to his 11-year-old daughter on Snapchat.

The defendant initially told law enforcement that he first learned of MV-1's age only a few weeks before his contact with law enforcement. He later stated that MV-1 told him her real age sometime in March 2022. The defendant admitted that he did not end his "relationship" with MV-1 upon learning her age. The defendant admitted that he told MV-1 to delete evidence of his conduct so that they would not get in trouble. He also stated several times in his interview with law enforcement that he should have stopped talking to MV-1. At the conclusion of the interview, the defendant stated that his "relationship" with MV-1 was not worth it because it ended with him sitting across from law enforcement.

As discussed in further detail *infra*, MV-1 is not the first of the defendant's victims. The investigation revealed at least four additional victims of the defendant's predatory behavior, including his daughter, spanning over the course of at least 17 years. For at least two of the identified additional victims, the defendant succeeded in employing similar grooming and abusive tactics to carry out his exploitation. As explained in further detail *infra*, the defendant engaged in hands on sexual abuse of a 12-year-old girl when he was

24 years old.

**GUIDELINES CALCULATION**

The Government calculates the defendant's guideline range at 210–262 months. The Government agrees with the United States Probation Office (USPO) that the defendant falls in Criminal History Category I and the base offense level is 32. The Government further agrees with the USPO that the specific offense characteristics at U.S.S.G. §§2G2.1(b)(1)B, (b)(3), and (b)(6) apply, bringing the offense level to 38. The Government asserts that the specific offense characteristic at U.S.S.G. §2G2.1(b)(2)(A) (commission of sexual contact or sexual act) also applies, bringing the offense level to 40. Applying the three level departure for acceptance of responsibility pursuant to U.S.S.G. §§3E1.1(a) and (b), the total offense level is 37, resulting in a guideline range of 210–262 months.

1. **Application of U.S.S.G. §2G2.1(b)(2)(A)**

The U.S.S.G. applies the definition of "sexual act" and "sexual contact" found at 18 U.S.C. §§ 2246(2) and (3). 18 U.S.C. § 2246(2) defines, in relevant part, a sexual act as "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3) defines, in relevant part, sexual contact as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

The definition of sexual contact notably differs from sexual act in that it includes

the intentional touching of "any person" to gratify the sexual desire of "any person." Sexual act requires the intentional touching of "another person" to gratify the sexual desire of "any person." The intentional touching of "another person" required by "sexual act" suggests that the touching must occur between two people. Whereas the intentional touching of "any person" required by "sexual contact" implies that the contact can be made by one person touching himself or herself. Here, the defendant directed MV-1 to send him photos and videos of herself masturbating. He also directed her to masturbate while on video calls with him. He did this, often while himself masturbating to completion.

There can be no doubt that masturbation is a form of sexual contact. Indeed, in *U.S. v. Sagg*, the 9th Circuit found that a person who forces a sleeping victim to touch them in a sexual manner constitutes sexual contact notwithstanding the victim's mental state. *United States v. Sagg*, 125 F.3d 1294, 1295 (9th Cir. 1997). In reaching this conclusion, the Court relied on the legislative history of the Sexual Abuse Act, citing that it was "drafted broadly to cover the widest possible variety of sexual abuse." *Id.* (internal quotations omitted).

It stands to reason that when MV-1 made sexual contact with herself through masturbation at the direction of the defendant, it was to arouse or gratify the desire of the defendant. This is particularly true for those instances when the defendant was masturbating along with MV-1. The defendant then used the photos and videos of MV-1 masturbating to abuse, humiliate, harass, and degrade her when accusing her of cheating on him by sending those same videos to fictitious Snapchat accounts of his own making.

This kind of sexual abuse seems to squarely fall within the type of "sexual abuse" the drafters of the Sexual Abuse Act intended to cover.

**STATUTORY CRITERIA AND RECOMMENDED SENTENCE**

**1. Nature and circumstances of the offense**

The defendant's conduct in this case necessitates a sentence above the guideline range. The defendant's conduct is not limited to soliciting nude photographs and videos from a vulnerable 12-year-old. He engaged in psychological manipulation, inflicting emotional abuse on MV-1 as a way to exert control over her. The defendant used a vulnerable pre-teen's belief that she was in love with him as a weapon against her, by continuously accusing her of cheating on him with other fictitious individuals of his own making. Through his grooming and emotional abuse, the defendant strategically isolated MV-1 from those best situated to provide her counsel and relief from the very pain he inflicted.

When contacted by law enforcement, the defendant attempted to shift blame onto his victim and downplay the extent of his abuse. The defendant closed the interview with law enforcement by stating his "relationship" with MV-1 was not worth it. Not because he knew it was illegal or wrong, or because of the harm he inflicted on an innocent child, but simply because he got caught.

**2. History and characteristics of the defendant**

The defendant's criminal history is long and includes a series of minor and serious offenses. The defendant has multiple convictions for domestic violence inflicted against the mother of his older children as well as the mother of his younger children. What the

defendant's criminal history fails to reflect is a long history of abuse of children. The investigation revealed, both pre-charging and during the pendency of this case, a series of victims who the defendant exploited in varying degrees, including hands on conduct with a 12-year-old.

Prior to the charges in this case, the defendant was arrested in 2020 for harassing and sending explicit photographs of himself to a female classmate of his then minor son. No charges resulted from this allegation. In December of 2020 the Department of Children, Youth, and Families (DCYF) in Washington State conducted an investigation into the defendant based on several reports by his then 11-year-old daughter that he was sending her photos of his penis on Snapchat and inappropriately touching her. The defendant's minor daughter reported the Snapchat incident on July 23, 2020. She then reported the inappropriate touching on July 31, 2020 and was admitted to the psych ward for suicidal ideations. In a later interview with DCYF, the defendant engaged in the same kind of victim-blaming as he did in his interview with law enforcement in this case. He denied any such conduct, downplayed his daughter's attempts at suicide, and claimed his daughter made fake reports because he took her phone from her.

During the pendency of this case, an additional victim, T.J., contacted the Alaska State Troopers to report that she had been sexually abused by the defendant in 2006. In an interview with investigators, T.J. reported that when she was 12 years old, she lived in an apartment with her father on a floor below where the defendant lived at the time. She explained how the defendant used his close friendship with her father to get close to her.

The defendant was not employed at the time, so he would assist T.J.'s father by allowing T.J. to stay at his apartment when she was not at school. The defendant was 24 years old in 2006.

Similar to how the defendant groomed the victim in this case, the defendant began his exploitation of T.J. by messaging her on the then popular social media application MySpace in October 2006. The defendant started by flattering T.J., escalated into telling her he loved her, declared the two to be in a relationship, despite living with his pregnant adult partner, and slowly worked his way up to sexual contact. The first time the defendant made physical contact with T.J, T.J. was spending the night at his apartment. T.J. was sleeping on the couch, while the defendant and his partner slept on the floor below. T.J. woke up to the defendant touching her breasts and then her vagina and butt over her underwear.

By November 2006, the defendant forcibly had sex with T.J. for the first time. T.J. reported that the defendant made her have sex with him every single day thereafter until he went to prison in December 2006. By the time the defendant was released from prison, T.J.'s father suspected the defendant had been inappropriate with his daughter and forbade the defendant from contacting her. The defendant stalked T.J. on her walk to and from school, and in March 2007, took her to a stranger's apartment and forced her to have sex with him one last time. But for T.J. moving out of the state, the defendant's hands on abuse likely would have continued. Law enforcement investigated the defendant's conduct in 2007 but no chargers were filed.

U.S. v. Powell
3:22-cr-00061-JMK-KFR
Page 11 of 15
Case 3:22-cr-00061-JMK-KFR   Document 44   Filed 12/14/23   Page 11 of 15

Finally, also during the pendency of this case, a 16-year-old from Michigan contacted Alaska State Troopers to report that she had been in a relationship with the defendant for three years. She reported that the defendant told her his name was TyShawn Gaither, but she learned his real name after his arrest. This victim stated the relationship started online when she was 13 years old. Similar to his conduct with MV-1, the defendant groomed this minor victim, eventually enticing her to send him nude photographs and videos. She further reported that although she deleted all of her texts with the defendant, there may be some evidence corroborating her story on her school email account.

The investigation uncovered a video of the defendant masturbating attached to an email on the victim's school email account. A search of the defendant's jail cell at Anchorage Correctional Center uncovered several letters from this minor victim. A review of the defendant's jail calls also uncovered numerous calls between the defendant and this minor victim. Despite being incarcerated on child exploitation charges in the instant case, the defendant managed to continue his exploitation of children from his jail cell. An above guideline sentence closes the gap between the understated degree of the defendant's papered criminal history and the true degree of his criminal conduct. A sentence of 360 months is sufficient but not greater than necessary to address the defendant's decades long history of and continued exploitation of vulnerable minor children.

### 3. Adequate deterrence

Given the defendant's conduct in this case, historically, and during the pendency of this case, the defendant is unlikely to be deterred by any jail sentence. Despite facing criminal charges, the defendant continued a relationship with a minor, communicating with her from jail. Consistent with a high rate of case attrition for sexual offenses and sex offenders, the defendant has been able to skate by unscathed, despite multiple past allegations of child sexual abuse. The investigation revealed that the defendant consistently responds to allegations of child sexual abuse by downplaying the severity of his conduct and victim-blaming. An above guideline sentence would send a message to the defendant that his decades long abuse of minors is unacceptable and mark the first effort by the criminal justice system to deter him from future similar conduct.

General deterrence is another important factor when considering the appropriate sentence for this defendant. As it stands, sex offenses often go underreported and conviction rates underrepresent the frequency of these types of crimes. An above guideline sentence would send a message to the general public that sexual crimes against children result in serious consequences.

A sentence of 360 months is sufficient but not greater than necessary to address the goal of deterring the defendant and the general public from engaging in this type of criminal conduct. In addition to any term of incarceration this Court chooses to impose, a lifetime of supervised release is likely necessary to deter this defendant from exploiting another minor in the future.

### 4. Protection of the public from further crimes

The defendant poses a serious danger to the public, particularly vulnerable minors. Evidenced by his ability to continue his exploitation of children from the confines of his jail cell, the defendant will stop at nothing to indulge his sexual fantasies and maintain relationships with children.

The defendant's history of sexual exploitation paints a picture of someone willing to use his position of trust to prey on minors, including his own daughter. For those victims who are strangers to the defendant when they first come into contact with him, he grooms them and gains their trust by making them believe they are in a committed relationship with him. The investigation revealed victims in his hometown of Spokane, Washington, Alaska, and Michigan.

For various reasons, the criminal justice system has failed to hold the defendant accountable for decades of abuse of children. Given the opportunity, the defendant's consistent conduct suggests he is likely to find another victim. An above guideline sentence is the first step to ensuring the safety of the public from a man who has inflicted physical and psychological trauma on several children across the country.

### 5. Avoidance of unwarranted disparities

As stated above, the defendant's criminal history is under-representative of his criminal conduct. The median sentence for defendants who plead to and are convicted of one count of enticement of a minor does not represent the full scope of the defendant's conduct. The defendant did not merely entice MV-1 and lure her into sending nude photographs and videos of herself. He exercised complete control of her life from

U.S. v. Powell
3:22-cr-00061-JMK-KFR

Page 14 of 15
Case 3:22-cr-00061-JMK-KFR   Document 44   Filed 12/14/23   Page 14 of 15

thousands of miles away through psychological abuse and threats. Moreover, the defendant has engaged in decades of abuse of children, including allegations of hands on abuse of his minor daughter and historic hands on abuse of a child with whom he held a position of trust as her father's best friend. An above guideline sentence would not result in a disparity where the full scope of the defendant's conduct when measured against the sentencing factors discussed *supra* justifies a sentence of 360 months.

## CONCLUSION

Based on the factors outlined in 18 U.S.C. § 3553(a), an above guideline sentence is sufficient but not greater than necessary. The Government respectfully requests a sentence of 360 months followed by a lifetime of supervised release.

RESPECTFULLY SUBMITTED December 14, 2023 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

/s *Ainsley McNerney*
AINSLEY MCNERNEY
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2023 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s *Ainsley McNerney*

U.S. v. Powell
3:22-cr-00061-JMK-KFR
Page 15 of 15
Case 3:22-cr-00061-JMK-KFR   Document 44   Filed 12/14/23   Page 15 of 15